**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

AMIRRA SUMMERS,

    Plaintiff,                          CASE NO.: 1:19-cv-12

-VS-

HALSTED FINANCIAL SERVICES,
LLC,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

      COMES NOW Plaintiff, AMIRRA SUMMERS, by and through the undersigned

counsel, and sues Defendant, HALSTED FINANCIAL SERVICES, LLC, and in support

thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47

U.S.C. §227 *et seq*. ("TCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. §

1692 *et. seq.* ("FDCPA").

## INTRODUCTION

    1.     The TCPA was enacted to prevent companies like Defendant, HALSTED

FINANCIAL SERVICES, LLC (hereinafter "Halsted"), from invading American

citizen's privacy and prevent abusive "robo-calls."

    2.     "The TCPA is designed to protect individual consumers from receiving

intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, --US--, 132

S.Ct. 740, 745, 181 L.Ed. 2d 881 (2012).

3.     "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4.     According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal.

## JURISDICTION AND VENUE

5.     This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6.     Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7.     Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8.     The Defendant resides in Cook County, Illinois. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(1).

## FACTUAL ALLEGATIONS

9.     Plaintiff is a natural person, and citizen of the State of North Carolina, residing in Cary, Wake County, North Carolina.

10.     Plaintiff is a "consumer" as defined in 15 U.S.C. § 1692(a)(3).

11.     Plaintiff is an "alleged debtor."

12.     Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

13.     Defendant, Halsted, is a limited liability company with its principal place of business located at 8001 N. Lincoln Ave., Suite 500, Skokie, Illinois 60077, and its registered agent, Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

14.     Defendant is a "debt collector" as defined by 15 U.S.C. § 1692(a)(6).

15.     The debt that is the subject matter of this complaint is a "consumer debt" as defined by U.S.C. § 1692(a)(5).

16.     Defendant called Plaintiff on Plaintiff's cellular telephone approximately four hundred (400) times in an attempt to collect an alleged consumer debt related to an auto loan.

17.     Defendant attempted to collect an alleged debt from the Plaintiff by this campaign of telephone calls.

18.     Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

19.     Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received and because she heard a pause when she answered her phone before a voice came on the line and/or she received prerecorded messages from Defendant.

20.     Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (919) ***-0046, and was the called party and recipient of Defendant's calls.

21.     Defendant placed an exorbitant number of automated calls to Plaintiff's cellular telephone (919) ***-0046 in an attempt to collect on an alleged auto loan.

22.     On several occasions since the account was placed with Halsted, Plaintiff instructed Defendant's agent(s) to stop calling her cellular telephone.

23.     In or about March of 2018, Plaintiff received a call from the Defendant, Plaintiff was met with an extended pause, eventually was connected to a live agent/representative of Defendant, explained to the agent/representative that she was aware of the obligation and demanded that Defendant cease placing automated calls to her aforementioned cellular telephone number.

24.     During the aforementioned phone conversation in or about March of 2018 with Defendant's agent/representative, Plaintiff unequivocally revoked any express consent Defendant may have otherwise believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

25.     Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

26.     Each subsequent call the Defendants made to the Plaintiff's aforementioned cellular telephone number was knowing and/or willful.

27.     Similarly, in or about May of 2018, due to the continued automated calls to her cell phone, Plaintiff asked her husband to answer the phone, he was met with an extended pause, was eventually was connected to a live agent/representative of Defendant, explained to the agent/representative that his wife had previously requested they stop calling, she was pregnant and the constant calls were causing her stress, and

again demanded that Defendant stop calling her aforementioned cellular telephone number.

28.     More recently, on or about October 9, 2018, Plaintiff returned a missed call to Defendant, was connected to a live agent/representative of Defendant, explained to the agent/representative that she had previously requested Defendant stop calling her, the agent/representative explained that she had no control over the calls as the calls were being made from a "dialer", and Plaintiff again demanded that Defendant stop calling her aforementioned cellular telephone number.

29.     Despite actual knowledge of its wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff despite the Plaintiff revoking any express consent the Defendant may have had to call her aforementioned cellular telephone number.

30.     On at least ten (10) separate occasions, Plaintiff (or her husband at the instruction of Plaintiff) has either answered a call from the Defendant or returned a call to the Defendant regarding her alleged account, held the line to be connected to a live representative, and demanded that the Defendant cease placing calls to her aforementioned cellular telephone number.

31.     Each of the Plaintiff's requests for the harassment to end was ignored.

32.     From March of 2018 through the filing of this Complaint, the Defendant has placed approximately four hundred (400) actionable calls to Plaintiff's aforementioned cellular telephone number, or as will be shown upon a thorough investigation of Defendant's records and Plaintiff's carrier records.

33.     Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to the Plaintiff's cellular telephone in this case.

34.     Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as it did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or Defendant, to remove the number.

35.     Defendant's corporate policy is structured as to continue to call individuals like the Plaintiff, despite these individuals explaining to Defendant they wish for the calls to stop.

36.     Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

37.     Defendant has numerous complaints against them across the country asserting that their automatic telephone dialing system continues to call despite being requested to stop.

38.     Defendant has had numerous complaints from consumers against them across the country asking to not be called; however, the Defendant continues to call the consumers.

39.     Defendant's corporate policy provided no means for the Plaintiff to have her number removed from the call list.

40.     Defendant has a corporate policy to harass and abuse individuals despite actual knowledge that the called parties do not wish to be called.

41.     None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

42.     Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

43.     From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

44.     From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's call.

45.     From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. For calls she answered, the time she spent on the call was unnecessary as she had repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

46.     Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering

them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

47.     Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

48.     Each and every call placed without express consent by Defendant to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

49.     Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

50.     As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, anxiety, nervousness, and aggravation.

### COUNT I
### (Violation of the TCPA)

51.     Plaintiff fully incorporates and realleges paragraphs one (1) through fifty (50) as if fully set forth herein.

52.     Defendant willfully violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that she wished for the calls to stop.

53.     Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, Halsted Financial Services, LLC, for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FDCPA)

54.     Plaintiff fully incorporates and realleges paragraphs one (1) through fifty (50) as if fully set forth herein.

55.     At all times relevant to this action Defendant is subject to and must abide by 15 U.S.C. § 1692 *et seq*.

56.     Defendant has violated 15 U.S.C. § 1692(d) by willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

57.     Defendant has violated 15 U.S.C. § 1692(d)(5) by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

58.     Defendant has violated 15 U.S.C. § 1692(f) by using unfair and unconscionable means to collect or attempt to collect any debt.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so

triable and judgment against Defendant, Halsted Financial Services, LLC, for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

/s/ James J. Parr
James J. Parr
Illinois Bar No.: 6317921
Agruss Law Firm, LLC
4809 N. Ravenswood Ave., Suite 419
Chicago, IL 60640-4409
Tele:  (312) 224-4695
james@agrusslawfirm.com
*Attorney for Plaintiff*